NANCY HERSH, ESQ., CA State Bar No. 49091
MARK E. BURTON, JR., ESQ., CA State Bar No. 178400
RACHEL ABRAMS, ESQ., CA State Bar No. 209316
HERSH & HERSH
A Professional Corporation
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, CA 94102-6388
(415) 441-5544

Attorneys for Plaintiff

E-filing

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

C 07 4232 EMC

| | |
|---|---|
| NATHANIEL PRATCHER, | ) CASE NUMBER |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND** |
| | ) **DEMAND FOR JURY TRIAL** |
| vs. | ) |
| | ) |
| ELI LILLY AND COMPANY, and DOES ONE through FIFTEEN, inclusive, | ) |
| | ) |
| Defendants. | ) |

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

**PRELIMINARY ALLEGATIONS**

1.

Jurisdiction of this Court is founded upon 28 U.S.C. §1332.

- 1 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

2.

Plaintiff NATHANIEL PRATCHER is a citizen of the United States and the State of Oregon, currently residing in Oregon.

3.

Defendant ELI LILLY AND COMPANY is a resident of and has its principal place of business in the State of Indiana.

4.

Plaintiff does not know the true names of the Defendants sued herein as DOES ONE through FIFTEEN, inclusive. Plaintiff alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused the injuries and damages sustained by Plaintiff and Plaintiff's decedent, as herein alleged.

5.

At all times herein mentioned, each of the Defendants was the agent and employee of every other Defendant in doing the acts herein alleged, and was, at all times, acting within the purpose and scope of said agency and employment and all of said acts and conduct were ratified and approved by said Defendants.

6.

At all times herein mentioned, Defendant ELI LILLY AND COMPANY ("DEFENDANTS") and DOES ONE through FIFTEEN, inclusive, and each of them, was and is a corporation existing under the laws of incorporation of the State of Illinois, with its principal place of business in Indianapolis, Illinois, doing business in the State of Oregon. At all times herein mentioned, Defendant ELI LILLY designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, and retailers for resale to physicians, hospitals, medical practitioners and the general public, a certain pharmaceutical product, hereinafter referred to as ZYPREXA (also known as OLANZAPINE).

7.

Plaintiff's decedent LAMOND PRATCHER's physicians prescribed ZYPREXA beginning in 2000 until his death on September 17, 2005, for treatment of Plaintiff's decedent's schizophrenia. Plaintiff's decedent LAMOND PRATCHER ingested these products and sustained serious injuries and death.

8.

As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff's decedent LAMOND PRATCHER suffered injuries and death, all to Plaintiff's general damage in a sum within the jurisdiction of this Court.

9.

As a direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff's decedent LAMOND PRATCHER was required to, and did, employ physicians and surgeons to examine, treat, and care for him, and therefore Plaintiff incurred medical and incidental expenses.

10.

As a further direct, proximate and legal result of the ingestion of ZYPREXA, Plaintiff and Plaintiff's decedent were prevented from attending to their usual occupations, and thereby sustained loss of earnings.

11.

ZYPREXA is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

12.

At all times relevant, the DEFENDANTS themselves, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distributed ZYPREXA.

13.

ZYPREXA has been widely advertised by the DEFENDANTS as effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than other

- 3 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

treatments. The DEFENDANTS further induced physicians to prescribe ZYPREXA for treating disorders that the FDA had not approved ZYREXA for treatment of.

14.

The DEFENDANTS, beginning in 1996, aggressively marketed and sold ZYPREXA by falsely misleading potential users about the products and by failing to protect users from serious dangers which the Defendants knew or should have known to result from use of ZYPREXA.

15.

The DEFENDANTS widely and successfully marketed ZYPREXA in the United States, and in the State of Oregon. The DEFENDANTS undertook advertising campaigns promoting the virtues of ZYPREXA in order to induce widespread use of the product.

16.

The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of ZYPREXA, was safe for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder and schizophrenia.

17.

The DEFENDANTS, and each of them, purposefully minimized and understated health hazards and risks associated with ZYPREXA. The DEFENDANTS, through promotional literature, deceived potential users of ZYPREXA and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. The DEFENDANTS, falsely and fraudulently withheld relevant information from potential users of ZYPREXA.

18.

Plaintiff is informed and believes and thereon alleges that total profits from the sale of ZYPREXA exceeds hundreds of millions of dollars.

19.

At least as early as 1998, the medical literature conclusively revealed data which linked ZYPREXA with causing diabetes. An indicative report was published on October 15, 1998, in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." Other numerous reports and studies are prevalent throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks. On July 1, 2002, Duke University Medical Center issued a Press Release about the recent finding that linked ZYPREXA to early onset diabetes. The researchers identified 289 cases of diabetes in patients who had been prescribed ZYPREXA. These findings were published on July 2, 2002 in the medical journal Pharmacotherapy, Vol. 22, No. 7, pages 841-52. The known danger that the DEFENDANTS said product ZYPREXA was causing hyperglycemia and diabetes was never indicated by said DEFENDANTS to Plaintiff's decedent's physician who prescribed the product to Plaintiff's decedent. Plaintiff's decedent was ignorant of said defect of said product prior to ingesting ZYPREXA.

20.

The physician who prescribed ZYPREXA to Plaintiff's decedent LAMOND PRATCHER relied on the representations made to him by the DEFENDANTS, and each of them, prior to the date of prescribing ZYPREXA for use. The physician relied on the representations regarding the safety of ZYPREXA, and would not have recommended for use or prescribed ZYPREXA if he had known the true facts regarding the safety of ZYPREXA.

21.

Prior to the date upon which the aforesaid product was prescribed to Plaintiff's decedent LAMOND PRATCHER, the DEFENDANTS knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the

- 5 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

likelihood of developing hyperglycemia, diabetes, ketoacidosis or pancreatitis and other injuries. The DEFENDANTS, and each of them, failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

22.

The DEFENDANTS thereby acted with malice towards Plaintiff, who accordingly request that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

### FIRST CAUSE OF ACTION
### [Strict Liability in Tort; Failure To Warn]

23.

Plaintiff hereby incorporates by reference as if fully set forth herein each and every allegation in paragraphs 1-23, inclusive, of this Complaint.

24.

At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by DEFENDANTS and ingested by Plaintiff's decedent LAMOND PRATCHER. The aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of ZYPREXA, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by

- 6 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Defendants, and each of them.

25.

The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein.

26.

The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder and/or schizophrenia, involved substantial dangers not readily recognizable by the ordinary user of the product. The Defendants, and each of them failed to warn of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop diabetes.

27.

The ZYPREXA designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants, and each of them, was further defective due to inadequate post-marketing warning or instruction because, after Defendants, and each of them, knew or should have known of the risks of injury from ZYPREXA, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to diabetes.

28.

Plaintiff and Plaintiff's decedent LAMOND PRATCHER, did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and death to Plaintiff's decedent LAMOND PRATCHER.

29.

The Defendants, and each of them knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably

- 7 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

scientifically knowable at the time of distribution.

30.

Plaintiff and Plaintiff's decedent LAMOND PRATCHER neither knew, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defect.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### [Strict Products Liability]

31.

Plaintiff hereby incorporates by reference as if fully set forth herein, each and every allegation contained in paragraphs 1 through 31 inclusive, of this Complaint.

32.

The ZYPREXA manufactured and/or supplied by Defendants, and each of them herein was placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

33.

Alternatively, the ZYPREXA manufactured and/or supplied by Defendants, and each of them, was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for bipolar disorder and schizophrenia.

34.

The ZYPREXA manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate warning or instruction because the Defendants and each of them knew or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

35.

The ZYPREXA manufactured and/or supplied by Defendants and each of them, was defective due to inadequate warning and/or inadequate testing.

36.

The ZYPREXA manufactured and/or supplied by Defendants, and each of them, was defective due to inadequate post-marketing warning or instruction because after the Defendant knew or should have known of the risk of injury from ZYPREXA, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

37.

As a proximate and legal result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, and each of them, Plaintiff's decedent LAMOND PRATCHER was caused to suffer the herein described injuries and death.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### THIRD CAUSE OF ACTION

### [Negligence]

38.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 38, inclusive, of this Complaint.

39.

At all times herein mentioned, Defendants, and each of them, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

40.

At all times herein mentioned, Defendants, and each of them, knew, or in the

exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

41.

The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over-promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

42.

The Defendants, and each of them, were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiff's decedent LAMOND PRATCHER.

43.

As a result of the carelessness and negligence of Defendants, and each of them, the aforesaid product caused Plaintiff's decedent LAMOND PRATCHER to thereby sustain injuries and death as herein alleged.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

**FOURTH CAUSE OF ACTION
(AGAINST THE MANUFACTURING DEFENDANTS)
[Breach of Implied Warranty]**

44.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 44, inclusive, of this Complaint.

- 10 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

45.

At all times mentioned herein, Defendants, and each of them, manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiff's decedent LAMOND PRATCHER, Defendants impliedly warranted to Plaintiff's decedent, and to his agents, that the product was of merchantable quality and safe for the use for which it was intended.

46.

Plaintiff's decedent LAMOND PRATCHER and his agents relied on the skill and judgment of the Defendants and each of them, in using the aforesaid product.

47.

The product was unsafe for its intended use, and it was not of merchantable quality, as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause the Plaintiff to sustain injuries and death as herein alleged.

48.

After Plaintiff was made aware that Plaintiff's decedent's injuries were a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

WHEREFORE, Plaintiff prays or judgment against Defendant as hereinafter set forth.

### FIFTH CAUSE OF ACTION

**[Breach of Express Warranty]**

49.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 49, inclusive, of this Complaint.

- 11 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

50.

The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising, advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiff's decedent LAMOND PRATCHER and other members of the general public.

51.

At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

52.

Plaintiff and Plaintiff's decedent LAMOND PRATCHER, and his physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury and death to Plaintiff's decedent LAMOND PRATCHER and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiff's decedent to sustain injuries and death as herein alleged.

53.

As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said Defendants were notified of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

### SIXTH CAUSE OF ACTION

**[Fraud]**

54.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 54, inclusive, of this Complaint.

55.

The Defendants falsely and fraudulently represented to Plaintiff's decedent LAMOND PRATCHER, his physicians and members of the general public, that the aforesaid product was safe for use to aid in treating bipolar disorder and schizophrenia. The representations by said Defendants were, in fact, false. The true facts include, but are not limited to the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff's decedent.

56.

The representations by said Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to the development of diabetes, that the products caused injuries including but not limited to diabetes, and death and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder and schizophrenia treatment and concealed warnings of the known or knowable risks of injury in using the products.

57.

When said Defendants made these representations, they knew that they were false. Defendants made said representations with the intent to defraud and deceive Plaintiff's decedent, and with the intent to induce him to act in the manner herein alleged.

58.

At the time Defendants made the aforesaid representations, and at the time Plaintiff's decedent took the actions herein alleged, Plaintiff's decedent and his physicians were ignorant of the falsity of these representations and reasonably believed them to be

true. In reliance upon said representations, Plaintiff's decedent was induced to, and did, use the aforesaid product as herein described. If Plaintiff's decedent had known the actual facts, he would not have taken such action. The reliance of Plaintiff's decedent and his physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

59.

As a result of Defendants' fraud and deceit, Plaintiff's decedent was caused to sustain the herein described injuries and death.

60.

In doing the acts herein alleged, the Defendants acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

**[Negligent Misrepresentation]**

61.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 61, inclusive, of this Complaint.

62.

The Defendants had an absolute duty to disclose the true facts regarding the safety of ZYPREXA as the only entities capable of knowing and reporting the true facts regarding the safety and testing of ZYPREXA. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

63.

The Defendants made the aforesaid representations with no reasonable

- 14 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

64.

The aforesaid representations were made to the physician prescribing ZYPREXA prior to the date it was prescribed to Plaintiff's decedent and the physician relied on those representations about the safety of ZYPREXA when prescribing ZYPREXA to Plaintiff's decedent.

65.

At the time the aforesaid representations were made, Defendants concealed from Plaintiff's decedent and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

66.

The aforesaid representations were made by Defendants with the intent to induce Plaintiff's decedent to act in the manner herein alleged, that is, to ingest ZYPREXA as prescribed.

67.

The Defendants falsely represented to Plaintiff's decedent, his physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder and schizophrenia. The representations by said Defendants were, in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiff's decedent and thereby caused his injuries and death.

68.

The Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information

it could not accurately make the aforesaid representation.

69.

At the time Defendants made the aforesaid representations, and at the time ZYPREXA was prescribed to Plaintiff's decedent, Plaintiff's decedent and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff's decedent ingested ZYPREXA as herein described. If Plaintiff's decedent had known the actual facts, he would not have taken such action. The reliance of Plaintiff's decedent and his physicians upon Defendants' representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

70.

As a result of Defendants' false representations and concealment, Plaintiff's decedent was caused to sustain the herein described injuries and death.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### [Fraud By Concealment]

71.

Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in paragraphs 1 through 71, inclusive, of this Complaint.

72.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff's decedent, and to his physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries and death as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants made the affirmative representations as set forth above to Plaintiff's decedent, his physicians and the general public prior to the date ZYPREXA was prescribed to Plaintiff's decedent, while concealing the following material facts.

73.

At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiff's decedent and to his physicians the true facts concerning the aforesaid product; that is, that use could cause injuries including but not limited to diabetes.

74.

At all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff's decedent's physicians and therefore from Plaintiff's decedent, with the intent to defraud as herein alleged.

75.

At all times herein mentioned, neither Plaintiff's decedent nor his physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment of schizophrenia.

76.

As a result of the concealment or suppression of the facts set forth above, Plaintiff's decedent sustained injuries and death as hereinafter set forth.

77.

In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

78.

That at all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff's decedent's physicians and therefore from Plaintiff's decedent, with the intent to defraud Plaintiff's decedent as herein alleged.

79.

At all times herein mentioned, neither Plaintiff's decedent nor his physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that ZYPREXA would not have been prescribed to Plaintiff's decedent LAMOND PRATCHER and he would not have ingested it.

80.

As a result of the concealment or suppression of the facts set forth above, Plaintiff's decedent suffered injuries and death as hereinafter set forth.

81.

In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff NATHANIEL PRATCHER prays for against DEFENDANTS as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as follows:

1. For general damages in the amount of $10,000,000.00;
2. For past and future medical, hospital, incidental and service expenses according to proof;
3. For pre-judgment and post-judgment interest provided by law;
4. For economic losses according to proof;
5. For costs of suit herein;
6. For punitive or exemplary damages against all Defendants in the amount of $25,000,000.00; and
7. For such other relief as the Court may deem just and proper.

- 18 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

DATED:   August 17, 2007.

HERSH & HERSH<br>
A Professional Corporation<br><br>
By _____<br>
RACHEL ABRAMS<br>
Attorneys for Plaintiff

- 19 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL